# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00329-CR

**Brandon Robisheaux, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
## NO. CR2012-042, HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

## O P I N I O N

Brandon Robisheaux was arrested for sexually assaulting A.B., who was the daughter of his then girlfriend, C.Y. The indictment alleged one charge for continuous sexual abuse of a child and two charges for sexual assault of a child, *see* Tex. Penal Code § 21.02(b) (setting out elements of offense of continuous sexual abuse), 22.011(a) (governing offense of sexual assault), and the indictment also contained an enhancement paragraph alleging that Robisheaux had previously been convicted of the felony offense of arson, *see id.* § 28.02(a)-(a-2) (outlining offense of arson), (d)-(f) (setting out offense level for different types of arson). At the end of the guilt-or-innocence phase, the jury acquitted Robisheaux of the continuous-sexual-abuse charge but convicted him of the two sexual-assault-of-a-child charges. During the punishment phase, Robisheaux entered a plea of true to the enhancement allegation, and the district court sentenced him to 50 years' imprisonment for both offenses. *See id.* § 22.011(f) (specifying that sexual assault is, in general, second-degree

felony); *see also id.* §§ 12.32(a) (listing permissible punishment range for first-degree felony), .42(b) (enhancing punishment range for second-degree felony to that of first-degree felony if defendant was previously convicted of felony offense). In four issues on appeal, Robisheaux asserts that article 38.37 of the Code of Criminal Procedure, which authorizes the introduction of evidence of prior sexual offenses, "is unconstitutional on its face"; that the admission of evidence of his prior extraneous offenses "violated the prohibition against ex post facto and retroactive laws"; that the district court erred when it overruled his Rule 403 objection to the admission of that evidence; and that the district court erred by not allowing him to admit evidence regarding an interaction between A.B. and C.Y. on the day that A.B. made an outcry about him. We will affirm the district court's judgments of conviction.

## DISCUSSION

### Article 38.37

In his first issue on appeal, Robisheaux argues that section 2 of article 38.37 of the Code of Criminal Procedure is "unconstitutional on its face because it wholly denies defendants due process and due course of law." *See In re Winship*, 397 U.S. 358, 364 (1970) (providing that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

"A party raising a facial challenge to the constitutionality of a statute must demonstrate that the statute operates unconstitutionally in all of its applications." *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 908 (Tex. Crim. App. 2011). "In a facial challenge to a statute's constitutionality,

2

courts consider the statute only as it is written, rather than how it operates in practice." *Id.* Accordingly, "a facial challenge to a statute is extremely difficult to prove as all courts presume that the Legislature enacted a constitutional law and all courts must seek to uphold the facial constitutionality of legislative enactments." *Id.* at 909.

The provision at issue applies to trials for certain sexual offenses, including the sexual assault of a child, and authorizes the admission of evidence showing that the defendant has committed a separate sexual offense, "[n]otwithstanding Rules 404 and 405, Texas Rules of Evidence, . . . for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant," Tex. Code Crim. Proc. art. 38.37, § 2(b); however, before evidence may be admitted under that section, the trial court is obligated to "conduct a hearing outside the presence of the jury for" the purpose of determining whether "the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt," *id.* art. 38.37, § 2-a. In addition, before the evidence may be admitted, the State has to "give the defendant notice" of its "intent to introduce" the evidence "not later than the 30th day before the date of the defendant's trial." *Id.* art. 38.37, § 3.

When asserting that section 2 of article 38.37 is facially unconstitutional, Robisheaux chronicles how character-propensity evidence has historically been held to be inadmissible out of concern that a defendant might be convicted based on that evidence rather than the evidence pertaining to the charged offense, *see, e.g.*, *Boyd v. United States*, 142 U.S. 450, 458 (1892) (explaining that "[h]owever depraved in character, and however full of crime their past lives may

3

have been, the defendants were entitled to be tried upon competent evidence and only for the offense charged"); *Brinegar v. United States*, 338 U.S. 160, 174 (1949) (determining that evidence of prior similar acts was not admissible and noting that decision was supported by "historically grounded rights of our system, developed to safeguard men from dubious and unjust convictions"), and notes that courts have held that the admission of character-propensity evidence violated the defendant's due-process rights, *see, e.g.*, *McKinney v. Rees*, 993 F.2d 1378, 1385 (9th Cir. 1993) (determining that admission of "emotionally charged" evidence regarding defendant's alleged fascination with weapons "was not relevant to the questions before the jury . . . [and] served only to prey on the emotions of the jury"). Further, Robisheaux highlights that courts in other states have determined that similar statutes were unconstitutional. *See State v. Ellison*, 239 S.W.3d 603, 606, 607-08 (Mo. 2007) (declaring unconstitutional statute allowing evidence of previous sexual offenses and noting that "[e]vidence of prior criminal acts is *never* admissible for the purpose of demonstrating the defendant's propensity to commit the crime with which he is presently charged"); *State v. Cox*, 781 N.W.2d 757, 772 (Iowa 2010) (determining that admitting evidence of "defendant's sexual abuse of other victims . . . based only on its value as general propensity evidence violates the due process clause of the Iowa Constitution").

However, after Robisheaux filed his brief in this case, two of our sister courts of appeals addressed the constitutionality of section 2 of article 38.37 and concluded that the statutory provision is constitutional and does not violate defendants' due-process rights. *See Belcher v. State*, No. 12-14-00115-CR, 2015 Tex. App. LEXIS 9352, at *12 (Tex. App.—Tyler Sept. 2, 2015, no pet.); *Harris v. State*, No. 14-14-00152-CR, 2015 Tex. App. LEXIS 8723, at *14 (Tex. App.—Houston

[14th Dist.] Aug. 20, 2015, pet. ref'd).  When making its determination, our sister court in *Belcher* noted that the ban against propensity evidence "is over three hundred years old" but determined that just because "'the practice is ancient does not mean [] it is embodied in the Constitution.'" 2015 Tex. App. LEXIS 9352, at *5 (quoting *United States v. Enjady*, 134 F.3d 1427, 1432 (10th Cir. 1998)).  In fact, the court highlighted that over the last 100 years every state has allowed, through the adoption of rules like Texas Rule of Evidence 404 or by judicial determination, prosecutors "to introduce prior bad act evidence, including sexual misconduct" for limited purposes such as "proof of motive, opportunity, intent, identity, or absence of mistake or accident."  *Id.* at *5-6; *see* Tex. R. Evid. 404(b) (providing non-exhaustive list of permissible uses for evidence of extraneous offenses). But the court also noted that "child sex abuse cases present evidentiary problems not resolved by any of the extraneous bad acts exceptions" because "the prosecution typically must rely on the largely uncorroborated testimony of the child victim" and because "the child's credibility becomes the focal issue." *Belcher*, 2015 Tex. App. LEXIS 9352, at *6.  With the evidentiary concerns present in sexual-offense cases in mind, the court also chronicled how the majority of states, including Texas, and the federal government began developing "lustful disposition exception[s] to the rule against propensity evidence" for cases involving the sexual abuse of children. *Id.* at *7-8; *see* Act of May 28, 1995, 74th Leg., R.S., ch. 318, § 48(a), 1995 Tex. Gen. Laws 2734, 2748-49 (enacting prior version of article 38.37), *amended by* Act of May 24, 2005, 79th Leg., R.S., ch. 728, § 4.004, 2005 Tex. Gen. Laws 2188, 2192, *amended by* Act of April 7, 2011, 82nd Leg., ch. 1, § 2.08, 2011 Tex. Gen. Laws 1, 6, *amended by* Act of May 17, 2013, 83rd Leg., ch. 387, § 1, 2013 Tex. Gen Laws 1167, 1167-68.

After discussing the evolution of state laws allowing for the admission of extraneous-offense evidence for sexual offenses, the court analogized article 38.37 to Federal Rule of Evidence 414. *Belcher*, 2015 Tex. App. LEXIS 9352, at *8. That Rule allows for the admission of "Similar Crimes in Child-Molestation Cases" and allows the evidence to be considered for "any matter to which it is relevant" provided that the defendant is given notice fifteen days before trial. Fed. R. Evid. 414(a)-(b). Moreover, the court noted that federal courts have determined that Federal Rule 414 does not present due-process concerns and is constitutional "because of the protection provided by Federal Rule of Evidence 403." *Belcher*, 2015 Tex. App. LEXIS 9352, at *8 (discussing *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001), *and United States v.Castillo*, 140 F.3d 874, 883 (10th Cir. 1998)); *see also United States v. Mound*, 149 F.3d 799, 800-01 (8th Cir. 1998) (determining that Federal Rule 413, which allows propensity evidence for cases involving rape and sexual assault, was constitutional provided that protections of Federal Rule 403 applied). Federal Rule 403, like the Texas counterpart, allows a trial court to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *see* Tex. R. Evid. 403. Moreover, the court reasoned that "[t]he policy concerns that served to justify the federal decision to admit propensity evidence in child molestation cases are equally applicable to state prosecutions." *Belcher*, 2015 Tex. App. LEXIS 9352, at *12; *see also* House Comm. on Criminal Proc. Reform, Bill Analysis, Tex. S.B. 12, 83rd Leg., R.S. (2013) (explaining that supporters of change to article 38.37 asserted that "[p]rosecuting sex crimes committed against children can be difficult due to the physical and

6

emotional trauma suffered by the victims," that there are often "long delays in reporting these crimes during which physical evidence can deteriorate or be destroyed," and that "[o]ften the only evidence at a trial may be the testimony of the traumatized" children who may be targeted "in part because they tend to make poor witnesses"); *Hammer v. State*, 296 S.W.3d 555, 561-62 (Tex. Crim. App. 2009) (noting that "[s]exual assault cases are frequently 'he said, she said' trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence"); *Jenkins v. State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd) (stating that "[t]he special circumstances surrounding the sexual assault of a child victim outweigh normal concerns associated with evidence of extraneous acts").

Although the court noted that the language of article 38.37 is different from the language of Federal Rule 414, the court explained that both "have virtually the same effect" and "make admissible evidence of the defendant's other sex crimes against children other than the complainant in order to show his propensity to commit the act of child sexual abuse alleged." *Belcher*, 2015 Tex. App. LEXIS 9352, at *10. In addition, the court explained that, like in the federal practice, before that type of evidence is admitted, "the trial court must still conduct a balancing test under Rule 403." *Id.* at *11; *see* Tex. Code Crim. Proc. art. 38.37, § 2(b) (providing that evidence is admissible "[n]otwithstanding Rules 404 and 405" but not excluding Rule 403). Further, the court observed that article 38.37 contains various procedural safeguards and affords the defendant the "ability to investigate and prepare to confront evidence of other sexual misconduct" by requiring, as described above, that the trial court "conduct a hearing out of the jury's presence to

7

determine that the evidence likely to be admitted will support a jury finding that the defendant committed the separate offense beyond a reasonable doubt" and "that the [S]tate give the defendant thirty days' notice of its intent to introduce such evidence." *Belcher*, 2015 Tex. App. LEXIS 9352, at *11 (citing Tex. Code Crim. Proc. art. 38.37, §§ 2-a, 3).

Similarly, our sister court in *Harris* analogized article 38.37 to Federal Rule 413, which allows for the admission of evidence of "Similar Crimes in Sexual-Assault Cases," Fed. R. Evid. 413, and noted that federal courts have determined that Rule 413 does not violate due-process rights. 2015 Tex. App. LEXIS 8723, at *9; *see also* Senate Comm. on Criminal Justice, Bill Analysis, Tex. S.B. 12, 83rd Leg., R.S. (2013) (explaining that amendment to article 38.37 was designed to move law "closer to" Federal Rules of Evidence and to "give prosecutors additional resources to prosecute sex crimes committed against children" due to heinous nature of those crimes and given "the importance of protecting children from sexual predators"). Further, the court also noted that there are exceptions to the general prohibition against the admission of extraneous offenses, including the exception located in section 1 of article 38.37, which allows "'evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense' for its bearing on relevant matters, including the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child." *Harris*, 2015 Tex. App. LEXIS 8723, at *10 (quoting Tex. Code Crim. Proc. art. 38.37, § 1(b)). Moreover, the court highlighted that several courts of appeals have determined that section 1 is constitutional and does not violate defendants' due-process rights. *Id.* at *10-11 (citing *Martin v. State*, 176 S.W.3d 887, 902 (Tex. App.—Fort Worth 2005, no pet.); *Brantley v. State*, 48 S.W.3d 318, 329-30 (Tex.

8

App.—Waco 2001, pet. ref'd); *Jenkins*, 993 S.W.2d at 136). In addition, the court pointed to the procedural safeguards contained in article 38.37 and commented that the defendant "has the right to challenge any witness's testimony by cross-examination at the hearing" held outside the presence of the jury. *Id.* at \*12. Finally, the court reasoned that article 38.37 "does not lessen [a defendant]'s presumption of innocence" and "does not alter the State's burden of proof because the State is still required to prove every element of the charged offense beyond a reasonable doubt." *Id.* at \*13; *see also Jenkins*, 993 S.W.2d at 136 (concluding that section 1 of article 38.37 was constitutional, in part, because it did "not impermissibly lessen the State's burden of proof").

We agree with the holdings and analyses from our sister courts of appeals. Accordingly, we conclude that Robisheaux has not demonstrated that section 2 of article 38.37 is facially unconstitutional because he has not shown that it "operates unconstitutionally in all of its applications." *See Fine*, 330 S.W.3d at 908. For these reasons, we overrule Robisheaux's first issue on appeal.

**Ex Post Facto and Retroactive Laws**

In his second issue on appeal, Robisheaux contends that the admission of extraneous-offense evidence under section 2 of article 38.37 violated "the prohibition against ex post facto and retroactive laws." *See* U.S. Const. art. I, § 9, cl. 3 (providing that no "ex post facto law shall be passed"); Tex. Const. art. I, § 16 (mandating that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made"); *see also Grimes v. State*, 807 S.W.2d 582, 583-84, 586-87 (Tex. Crim. App. 1991) (explaining that law is ex post facto if it is "passed 'after the fact' or commission of an act" and retrospectively changes consequences

9

pertaining to act and that Texas courts have adopted federal definition of ex post facto when interpreting Texas constitutional provision by determining "whether a statute assigns more disadvantageous criminal or penal consequences to an act than did the law in place when the act occurred"). The extraneous-offense evidence at issue was introduced through the testimony of L.E., who testified regarding conduct that occurred before section 2 of article 38.37 went into effect. *See* Act of May 17, 2013, 83rd Leg., R.S., ch. 387, § 1, 2013 Tex. Gen. Laws 1167, 1167-68 (enacting section 2 of article 38.37). In particular, L.E. explained that she and Robisheaux began a "sexual relationship" twelve years before the offenses at issue in this case and fourteen years before the trial, that she was thirteen and that Robisheaux was twenty at the start of the relationship, that the relationship lasted for a couple of years, and that she became pregnant two years after the relationship started.

When asserting on appeal that this evidence should not have been admitted, Robisheaux notes that there are four types of impermissible ex-post-facto laws, *see Calder v. Bull*, 3 U.S. 386, 390 (1798) (setting out types of ex-post-facto laws); *see also Carmell v. Texas*, 529 U.S. 513, 522 (2000) (using list of ex-post-facto laws from *Calder*); *Ex parte Heilman*, 456 S.W.3d 159, 163 (Tex. Crim. App. 2015) (describing *Calder* as "the seminal case on the *Ex Post Facto Clause*"), and asserts that the admission of the extraneous-offense evidence in this case fell under the first and fourth categories. The first type "makes an action done before the passing of the law, and which was innocent when done, criminal," and the fourth type "alters the legal rules of evidence, and receives less, or different, testimony than the law required at the time of the commission of the offense, in order to convict the offender." *Calder*, 3 U.S. at 390-91. Regarding

10

the first type of ex-post-facto law, Robisheaux acknowledges that the sexual assault of a minor was not "innocent" before section 2 became effective, but he asserts that the admission of evidence pertaining to prior offenses under section 2 allowed those extraneous offenses to be considered as "substantive evidence of guilt to support a conviction" and permitted the jury to convict him "solely, or at least in part, based on extraneous act evidence that occurred" before section 2 went into effect. Regarding the fourth type, Robisheaux contends that the admission of extraneous-offense evidence under section 2 allowed the jury to determine his guilt "simply by believing the testimony of" L.E. who was not named "in the indictment . . . about external criminal acts that [he] is alleged to have committed . . . independent of the evidence presented in support of the charged criminal conduct against the complainant named in the indictment." Accordingly, Robisheaux urges that the admission of the evidence "reduce[d], if not altogether eliminate[d], the quantum of evidence previously required to convict someone" because the jury may now convict a defendant "solely on its determination, beyond a reasonable doubt, that" the defendant committed an extraneous-sexual offense.

After Robisheaux filed his brief in this case, one of our sister courts of appeals rejected claims that the admission of extraneous-offense evidence under section 2 falls into either of the categories of impermissible ex-post-facto laws relied on by Robisheaux. *See Baez v. State*, No. 04-14-00374-CR, 2015 Tex. App. LEXIS 10540, at *19-21 (Tex. App.—San Antonio Oct. 14, 2015, no pet. h.). Specifically, the court determined that section 2 "does not allow extraneous-offense evidence to be offered as substantive evidence of guilt" and that "[t]he State must still satisfy its burden of proof as to each element of the crime." *Id.* at *19. In addition, the court concluded that section 2 does not alter "the legal rules of evidence to allow less or different testimony than the law

11

required at the time of the commission of the offense in order to convict the defendant." *Id.* Further, the court explained that "'the quantum of evidence remains the same before and after the enactment of article 38.37. No element is eliminated from the offense to be proved; neither is the amount or measure of proof necessary for conviction reduced, altered, or lessened.'" *Id.* at *20 (quoting *McCulloch v. State*, 39 S.W.3d 678, 684 (Tex. App.—Beaumont 2001, pet. ref'd)); *see also Dominguez v. State*, 467 S.W.3d 521, 526 (Tex. App.—San Antonio 2015, pet. ref'd) (determining that admission of evidence under section 2 did not fall under fourth category because statute "neither changes the State's burden of proof to support a conviction for sexual assault of [a] child nor lessens the amount of evidence required to sustain a conviction"); *McCulloch*, 39 S.W.3d at 683-85 (determining that admission of evidence under prior version of article 38.37, which did not contain section 2 but did allow admission of evidence of extraneous offenses committed by defendant against same victim alleged in indictment to show state of mind of defendant and previous relationship between defendant and victim, did not fall under fourth category of impermissible ex-post-facto law). Further, the court reasoned that although the statute removed the restrictions from Rule of Evidence 404 that had only allowed the admission of evidence of extraneous offenses for certain purposes and although the statute enlarges the scope of admissible testimony, it does not alter the amount of proof needed for conviction. *Baez*, 2015 Tex. App. LEXIS 10540, at *20.

We agree with the analysis of our sister court and conclude that no ex-post-facto violation occurred.

As set out above, Robisheaux also contends that the admission of the extraneous-offense evidence violated the prohibition against retroactive laws. *See* Tex. Const. art. I, § 16;

12

*see also Grimes*, 807 S.W.2d at 587 (discussing difference between prohibition against ex-post-facto law and prohibition against retroactive law and assuming for sake of argument that "proscription against retroactive legislation is applicable to criminal cases"). "The retroactive laws provision of the Texas Constitution operates only to prohibit the application of statutes which disturb vested, substantive rights." *Ibarra v. State*, 11 S.W.3d 189, 192 (Tex. Crim. App. 1999). "Laws altering procedure do not generally fall within the prohibition." *Id.*

Assuming without deciding that the prohibition against retroactive laws could apply to statutes governing the permissible uses of evidence, *see Fowler v. State*, 991 S.W.2d 258, 261 (Tex. Crim. App. 1999) (concluding that applying harm analysis under new Rule of Appellate Procedure in effect at time of appeal did not constitute violation of prohibition against retroactive laws because procedural mechanisms for reviewing convictions are not "a vested and substantive right"); *Ex parte Davis*, 947 S.W.2d 216, 220 (Tex. Crim. App. 1996) (determining that legislative restriction on number of applications for writ of habeas corpus was "procedural and . . . thus outside the purview of the 'retroactive law' prohibition"), we do not believe that the statutory change at issue in this case ran afoul of that prohibition because Robisheaux did not have a vested and substantial right to the prior limitation on the permissible uses of extraneous-offense evidence.

On appeal, Robisheaux also contends that applying the recently added section 2 of article 38.37 to allow the admission of extraneous-offense evidence for character-propensity purposes "deprived him of substantial constitutional rights to a fair trial and due process and severely limited his ability to mount a proper and effective defense to the indicted charges."

Regarding his ability to mount a defense, we note that during his opening statement, Robisheaux urged that the police failed to thoroughly investigate the case and that he offered to help

prove his innocence by submitting to a lie-detector test, to a drug test, and to DNA testing but that the police never performed any of those tests. Moreover, Robisheaux repeatedly emphasized that there was no physical evidence to corroborate "any part of" A.B.'s allegations. Further, Robisheaux argued that A.B. was "a troubled, mentally unstable and mentally ill young woman," that A.B. was "good at lying" and "manipulating"; and that A.B. was lying about the allegations against Robisheaux.

Similarly, during his cross-examination of A.B., Robisheaux questioned her about whether anyone could "corroborate any of the claims of sexual abuse" and emphasized that the only evidence of the activity was her testimony, and A.B. admitted that no one else ever witnessed any inappropriate behavior. In response to questions by Robisheaux, A.B. also admitted that she started smoking marijuana before she met Robisheaux, discussed her history of mental illness and mental-health treatment, and detailed her suicide attempt that occurred before she met Robisheaux. Regarding the events leading up to A.B. telling her mother about the abuse, Robisheaux asked A.B. about whether she had been given any medication after having been rushed to the hospital and when she was treated at a mental-health hospital and questioned A.B. about whether she told her treating physicians that she had been hearing and seeing things that were not real. In addition, Robisheaux asked A.B. about why she did not tell her mother sooner, and A.B. admitted that she did not know if her mother would believe her given their difficult history. Further, Robisheaux pointed out inconsistencies between A.B.'s testimony at trial and her statements to a forensic interviewer at the Children's Advocacy Center, questioned how these events could have happened without people witnessing them, asked A.B. why she agreed to go on an out-of-town trip with Robisheaux while the abuse was occurring and why she did not try to get away from him on that trip when he would leave

14

the hotel to go to work, and questioned why A.B. would ever let herself be alone with Robisheaux after the first alleged incident. Moreover, after A.B. testified that Robisheaux did not wear condoms and did ejaculate, Robisheaux questioned her about whether any DNA was collected.

When Robisheaux was cross-examining C.Y., she admitted that she had a turbulent relationship with A.B. before she started dating Robisheaux and explained that shortly before A.B. made the outcry, she took A.B.'s phone away because A.B. would not divulge the identity of the people that she was talking to. C.Y. also testified that A.B. got upset before making the outcry after seeing Robisheaux at the house, that A.B. asked why he was there, that A.B. appeared to be on drugs and was angry, and that A.B. started hitting C.Y. In addition, Robisheaux asked C.Y. if A.B. volunteered the allegations, and C.Y. explained that A.B. only talked about the assault in response to C.Y.'s questions. Moreover, Robisheaux questioned C.Y. about whether the police ever took samples of A.B.'s clothing or sheets for testing or did a forensic examination of the house. During his cross-examination of the sexual-assault-nurse examiner who examined A.B., Noella Hill, Robisheaux emphasized that no evidence was collected during the exam and that A.B. did not have any injuries.

In a further attempt to undermine A.B.'s credibility, Robisheaux called one of his former co-workers, Michael Alcorta, to the stand to testify, and in his testimony, Alcorta explained that he shared a hotel room with Robisheaux when they were working out of town during the time in which the abuse was alleged to have been occurring and that he never saw Robisheaux interact with a teenage girl and never saw anyone else in the room.

In addition, during his closing, Robisheaux emphasized the presumption of innocence, argued that "[t]here is a serious lack of credible evidence," urged that there was "zero law enforcement

15

investigation evidence presented," asserted that A.B.'s version of events changed depending on who she talked with, commented that there is no evidence to corroborate her testimony, mentioned A.B.'s "serious mental health issues that go directly to her credibility," pointed to the testimony from C.Y. stating that A.B. became physically violent with her, questioned A.B.'s version by asserting that A.B. did not have to be around Robisheaux, argued that A.B. would not have asked to go out of town with Robisheaux if he was sexually abusing her, and noted that A.B. did not make any claim about an incident out of town until trial and that Alcorta testified that he never saw a teenage girl with Robisheaux when Robisheaux went out of town.

Given the preceding, we cannot conclude that the admission of evidence through article 38.37 limited Robisheaux's ability to present a defense, particularly in light of the fact that the jury acquitted him of the charge of continuous sexual abuse. Furthermore, in light of our discussion regarding the purpose of the amendment, regarding the procedural protections imbedded in article 38.37 that must be complied with (and were complied with) before evidence of extraneous offenses may be admitted, and regarding the protections afforded by Rule of Evidence 403, we cannot conclude that the admission of the evidence in dispute deprived Robisheaux of any due-process rights or of the right to a fair trial.

For the reasons previously given, we overrule Robisheaux's second issue on appeal.

**Rule 403 Objection**

In his third issue on appeal, Robisheaux contends that the district court erred by overruling his Rule 403 objection to the admission of evidence concerning his prior sexual relationship with L.E. *See* Tex. R. Evid. 403.

When reviewing a trial court's ruling on the admission of evidence, appellate courts use an abuse-of-discretion standard of review. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside "the zone of reasonable disagreement," *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is "arbitrary or unreasonable," *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the ruling will be upheld provided that the trial court's decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

Under Rule 403, a trial "court may exclude relevant evidence if its probative value is *substantially outweighed* by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." Tex. R. Evid. 403 (emphasis added). "Under Rule 403, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice. The rule envisions exclusion of evidence only when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value." *Hammer*, 296 S.W.3d at 568 (footnotes and internal quotation marks omitted). Accordingly, "the plain language of Rule 403 does not allow a trial court to exclude otherwise relevant evidence when that evidence is merely prejudicial. Indeed, all evidence against a defendant is, by its very nature, designed to be prejudicial." *Pawlak v. State*, 420 S.W.3d 807, 811 (Tex. Crim. App. 2013) (internal citation omitted).

When performing a Rule 403 analysis, courts should balance the following factors:

> (1) the inherent probative force of the proffered item of evidence along with (2) the
> proponent's need for that evidence against (3) any tendency of the evidence to

suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted); *see Davis*, 329 S.W.3d at 806 (explaining that "probative value" refers to how strongly evidence makes existence of "fact of consequence" "more or less probable" and to how much proponent needs evidence and that "unfair prejudice" refers to how likely it is that evidence might result in decision made on improper basis, including "an emotional one"). Although appellate courts review a trial court's ruling on Rule 403 grounds for an abuse of discretion, *see Pawlak*, 420 S.W.3d at 810, reviewing courts should bear in mind that trial courts are given "an especially high level of deference" for Rule 403 determinations, *see United States v. Fields*, 483 F.3d 313, 354 (5th Cir. 2007).

On appeal, Robisheaux contends that the danger of unfair prejudice is even more present in a case like this one where evidence of extraneous offenses is admitted under section 2 of article 38.37 rather than under Rule of Evidence 404 because the jury is not provided with a limiting instruction setting out the permissible uses for extraneous-offense evidence and is instead allowed to use the evidence for any relevant matter including character conformity. *Compare* Tex. Code Crim. Proc. art. 38.37, § 2, *with* Tex. R. Evid. 404(b). In addition, Robisheaux urges that the danger of unfair prejudice was exacerbated by the fact that the State repeatedly emphasized in its closing that Robisheaux previously assaulted L.E. and that he was "attracted to 13-year-old girls, middle school girls."

Finally, Robisheaux primarily argues that the inherent probative force is weak because "the extraneous conduct evidence . . . is both remote from and dissimilar to the charged offense[s]." In particular, Robisheaux notes that the extraneous offenses involving L.E. were alleged to have started twelve years before the offenses at issue and fourteen years before the trial, that there was no allegation of intervening misconduct, and that he had the permission of L.E.'s mother to date L.E. *See Reyes v. State*, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002, pet. ref'd) (noting that remoteness of prior offenses affects their probative value); *see also Bachhofer v. State*, 633 S.W.2d 869, 872 (Tex. Crim. App. 1982) (determining that offense occurring four years before trial was too remote to be admissible when there were no intervening incidents). *But see Corley v. State*, 987 S.W.2d 615, 620-21 (Tex. App.—Austin 1999, no pet.) (noting that cases like *Bachhofer* in which courts decided that extraneous offense was too remote if it took place more than few years before trial were decided before enactment of Rules of Evidence, which favors admission of evidence, and under common-law principles, which favored exclusion of evidence); *Gonzales v. State*, 838 S.W.2d 848, 863 (Tex. App.—Houston [1st Dist.] 1992, pet. dism'd), (questioning whether *Bachhofer* is still good law after enactment of Rule of Evidence 404), *disapproved of on other grounds by Tate v. State*, 981 S.W.2d 189, 193 n.5 (Tex. Crim. App. 1998) (explaining that contrary to language in *Gonzales*, "a victim's character is not an essential element of a claim of self-defense"). Moreover, Robisheaux contends that remoteness is even more of a problem when evidence "is admitted for its bearing on character conformity, as opposed to the other purposes permitted by" Rule of Evidence 404, because events that occur in the distant past are a poor indicator of an "accused's present character." *See Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin

19

2011, pet. ref'd) (explaining that remoteness reduces probative value of extraneous offense "because, logically, the passage of time allows things and people to change"); *cf. Ex parte Miller*, 330 S.W.3d 610, 620-21 (Tex. Crim. App. 2009) (discussing rationale behind remoteness limitation on impeachment evidence used to attack witness's character); Tex. R. Evid. 609(b) (limiting use of witness's prior conviction for impeachment purposes if more than ten years have passed since conviction or release unless probative value substantially outweighs prejudicial effect).

As pointed out by Robisheaux, the extraneous offenses at issue occurred over a two-year period and started twelve years before the offenses alleged in the indictments and fourteen years before the underlying trial, and courts have determined that similar time gaps reduced the probative force of the evidence of extraneous offenses. *See Gaytan*, 331 S.W.3d at 226-27 (explaining that trial court could have determined that "inherent probative force was significantly reduced" where evidence showed that extraneous offenses occurred 28 and 24 years before trial); *Newton v. State*, 301 S.W.3d 315, 317, 320 (Tex. App.—Waco 2009, pet. ref'd) (commenting that probative value of extraneous offense was "significantly lessen[ed]" by fact that prior offense occurred 25 years before charged offenses).

However, remoteness is not the only factor to consider when analyzing the probative value of evidence of an extraneous offense. *Gaytan*, 331 S.W.3d at 226-27. Although Robisheaux asserts that the evidence pertaining to the extraneous offenses differed from the evidence of the charged offenses, our review of the record shows that there were significant similarities. During the article 38.37 hearing held outside the presence of the jury and after A.B. testified during the trial, *see Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000) (stating that appellate courts

review trial court's ruling on admissibility of evidence "in light of what was before the trial court at the time the ruling was made"), L.E. testified that she had a sexual relationship with Robisheaux that started when she was thirteen years old and continued until she was fifteen years old, that Robisheaux took her to a secluded area to have sex with her, that Robisheaux did not use a condom when they had intercourse, that Robisheaux encouraged L.E. to smoke marijuana during some of these encounters, and that she did smoke. L.E. repeated those assertions during the trial. Similarly, in her testimony, A.B. explained that Robisheaux started sexually assaulting her when she was thirteen years old; that the improper conduct continued until she was fourteen when she made him stop; that Robisheaux did not wear a condom during these encounters; that the offenses occurred in Robisheaux's apartment, in a creek bed, in a hotel in another town, and in his truck; that Robisheaux offered her cocaine and marijuana during some of the encounters; and that she used those drugs when they were offered. *See Newton*, 301 S.W.3d at 318 (explaining that extraneous offense was sufficiently similar, in part, because both victims were same age when abuse started and because abuse lasted for several years).

Although the remoteness of the extraneous offenses undermines their probative value, we believe that the district court could have reasonably determined that the remarkable similarities between the extraneous offenses and the charged offenses strengthened the probative force of the evidence. Accordingly, we believe that the first factor is either neutral or, "at most, . . . somewhat favors exclusion." *See Gaytan*, 331 S.W.3d at 227; *see also Newton*, 301 S.W.3d at 320 (determining that inherent probative value of remote but similar extraneous offense weighed "only slightly in favor of admissibility").

21

Turning to the State's need for the evidence, we note that Robisheaux repeatedly urged in his opening statement and in his cross-examination of A.B. that there was no physical evidence demonstrating that any sexual offense occurred and that her claims about sexual abuse were based on her "testimony alone." In addition, Robisheaux emphasized during his cross-examination of A.B. that she had made a prior suicide attempt, that she had received mental-health treatment in the past, and that she started smoking marijuana before meeting Robisheaux. Moreover, although the State called C.Y. to testify about A.B.'s outcry of sexual abuse and although the State introduced medical reports prepared by Hill and the medical personnel who treated her, C.Y.'s testimony and the reports "essentially simply repeated what [A.B.] told" C.Y. and the medical personnel about the alleged abuse. *See Gaytan*, 331 S.W.3d at 227. Accordingly, the second factor "weighs strongly in favor of admission" because without the evidence from L.E., "the State's case would have basically come down to" A.B.'s word against Robisheaux's. *See id.*[1]

Additionally, although the testimony might have had a tendency to suggest a decision on an improper basis because the testimony pertained to a previous sexual assault of a minor, because that type of evidence is inflammatory and can be unfairly prejudicial, *see Gigliobianco*, 210 S.W.3d at 641 (stating that evidence might encourage decision on improper basis if it arouses jury's sympathy or hostility "without regard to the logical probative force of the evidence"); *Martin*, 176 S.W.3d at 897 (providing that evidence of sexual misconduct involving children is inherently inflammatory), and because the evidence presented at trial also established that L.E. became pregnant and that Robisheaux denied the baby and was ordered to submit to a paternity test, we note that this

---

[1] In his closing, Robisheaux agreed that "[t]his entire case is" A.B.

potential was ameliorated somewhat by the fact that the testimony from L.E. concerning the sexual misconduct discussed actions that were no more serious than the allegations forming the basis for the indictment.[2]

Furthermore, the evidence regarding the extraneous offenses was not confusing or technical in nature, *see Gigliobianco*, 210 S.W.3d at 641 (explaining that scientific evidence is type of evidence that "might mislead a jury that is not properly equipped to judge the probative force of the evidence"), and the evidence was relevant to whether Robisheaux abused A.B., *see Gaytan*, 331 S.W.3d at 228 (noting that evidence that defendant sexually abused other children is relevant to issue of whether he abused victim alleged in indictment); *see also* Tex. R. Evid. 401 (providing that evidence is relevant if it makes material fact more or less probable). Accordingly, the evidence concerning L.E. did not have a tendency to distract the jury or to be given undue weight.

Finally, the evidence did not consume an inordinate amount of time or repeat evidence that had already been admitted. The evidence regarding the extraneous offense was only admitted through the testimony of L.E. Moreover, the guilt-or-innocence phase of the trial was held over three days, and the record for that phase is hundreds of pages long; however, L.E.'s testimony was only eight pages long. *Compare Schiele v. State*, No. 01-13-00299-CR, 2015 Tex. App. LEXIS 1646, at *19-20, *21-22 (Tex. App.—Houston [1st Dist.] Feb. 19, 2015, pet. ref'd) (mem. op., not designated for publication) (determining that fact that evidence in dispute spanned

---

[2] During the article 38.37 hearing, L.E. testified regarding acts of violence committed by Robisheaux against her, regarding threats that Robisheaux made to her, and regarding Robisheaux offering her cocaine, but the district court ruled that L.E. could not testify regarding those topics during the trial.

23

50 pages of 118-page record and was also admitted through two recordings weighed against admissibility because evidence consumed "not insignificant" amount of time but still finding that trial court did not abuse its discretion where half of factors relevant to Rule 403 analysis weighed in favor of admissibility), *and McGregor v. State*, 394 S.W.3d 90, 121-22 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (concluding that fact that evidence of extraneous offenses constituted one third of trial weighed against admissibility but upholding trial court's decision to admit evidence), *with Russell v. State*, 113 S.W.3d 530, 544-49 (Tex. App.—Fort Worth 2003, pet. ref'd) (determining that trial court erred by admitting evidence of extraneous offenses where evidence was 30 percent of testimony, where State's need for evidence was low "because ample evidence" existed regarding intent, and where evidence of extraneous offense was "more heinous" than charged offense).

Given our standard of review, the presumption in favor of admissibility, and the factors discussed above, we cannot conclude that the district court abused its discretion by overruling Robisheaux's Rule 403 objection. *See Hammer*, 296 S.W.3d at 568 (explaining that exclusion under "Rule 403 . . . should be used sparingly, especially in 'he said, she said' sexual-molestation cases that must be resolved solely on the basis of the testimony of the complainant and the defendant"). Accordingly, we overrule Robisheaux's third issue on appeal.

**Evidence Pertaining to Conversation Between A.B. and her Mother**

In his final issue on appeal, Robisheaux contends that the district court erred by denying his request to admit evidence showing that on the same day that A.B. made an outcry about Robisheaux, C.Y. found a pregnancy test and asked her daughter if she was involved with a man who was twenty-years old and lived out of town.

The testimony at issue was discussed during a hearing that was held outside the presence of the jury under Rule of Evidence 412. *See* Tex. R. Evid. 412. That Rule generally prohibits the admission of evidence concerning "specific instances of a victim's past sexual behavior." *Id.* R. 412(a). However, the Rule does contain exceptions and allows the admission of that type of evidence if it "relates to the victim's motive or bias" or if it "is constitutionally required to be admitted," but "the probative value of the evidence" must outweigh "the danger of unfair prejudice." *Id.* R. 412(b)(2)(C), (E), (3). Before evidence of the victim's "past sexual behavior" may be admitted, the trial court is required to conduct an "in camera hearing." *Id.* R. 412(c).

During the hearing, C.Y. explained that Robisheaux told her that A.B. had confided in him that A.B. was seeing a twenty-year-old man from another town; that after Robisheaux told C.Y. about the older man, C.Y. found a pregnancy test in A.B.'s room and discovered some text messages on A.B.'s phone that were not sexual in nature but were from someone that C.Y. did not know; that C.Y. assumed that the text messages were from the man that Robisheaux had described; that C.Y. questioned A.B. while Robisheaux was at the house about the text messages and about whether she was seeing anyone; that A.B. never gave her any information about a twenty-year-old man and never admitted to having any kind of relationship with a twenty-year-old man; that A.B. asked C.Y. why Robisheaux was back in their lives and complained that he would never leave; that A.B. overdosed on an over-the-counter medication after the conversation; that C.Y. took A.B. to the hospital; that A.B. regained consciousness and asked if she "had a baby in my belly"; that C.Y. answered, "no"; that A.B. went back to sleep for a couple of hours; that C.Y. asked A.B. when A.B. woke up if Robisheaux had touched her inappropriately; and that A.B. said that Robisheaux had been engaging in inappropriate sexual behavior with her.

25

Moreover, although C.Y. admitted that she told the police that A.B. may have been involved in a sexual relationship with a twenty-year-old man from out of town, she clarified that she was basing that assertion on information that Robisheaux had previously told her and expressly denied that A.B. ever said that she was involved with a twenty-year-old man. Furthermore, C.Y. stated that when she talked with the police, she was still in the process of figuring out what had happened and how much Robisheaux had been manipulating her. In addition, C.Y. explained that A.B. told her shortly before the trial that she was never involved with a twenty-year-old man.[3] During a prior Rule 412 hearing in which A.B. was called to testify, she specifically denied having a sexual relationship with a twenty-year-old man. Ultimately, the district court determined that the probative value of the testimony was "far outweighed by the potential prejudice of leaving a false impression that apparently cannot be proven to the jury" and excluded "testimony that would relate to some type of physical relationship with" a twenty-year-old man from out of town.

On appeal, Robisheaux contends "that the exclusion of this evidence was error, and harmed his defense because he was unable to provide the jury with a clear and direct motive for [A.B.] to fabricate the allegations against him." In addition, Robisheaux urges that the "evidence was directly relevant" to whether the offenses occurred and to A.B.'s credibility and concerned events occurring "mere hours from the accusation of sexual assault against" him. Accordingly, Robisheaux contends that the evidence was admissible under Rule of Evidence 412(b)(2)(C), which,

---

[3] Regarding the conversation that she had with A.B. a few days before trial, C.Y. explained that A.B. said that "there was never an older man" but did say that she had been involved with "a boy that she went to high school with." Also, C.Y. testified that she never found out the boy's name and provided no further information regarding the nature of the relationship.

as set out above, allows the admission of evidence regarding a victim's past sexual history that "relates to the victim's motive or bias" if the probative value of the evidence outweighs the danger of unfair prejudice. *Id.* R. 412(b)(2)(C), (3). Moreover, Robisheaux contends that the evidence was admissible under Rule of Evidence 412(b)(2)(E) because the evidence was "constitutionally required" to be admitted. *See id.* R. 412(b)(2)(E), (3). Specifically, Robisheaux asserts that the exclusion violated his due-process right to have "a meaningful opportunity to present a complete defense." *See United States v. Scheffer*, 523 U.S. 303, 329 n.16 (1998) (Stevens, J., dissenting) (explaining that Constitution guarantees meaningful opportunity to present defense). Similarly, Robisheaux contends that the exclusion violated his confrontation rights because that right includes being given an opportunity to cross-examine a witness to attack the witness's credibility or to establish the witness's possible bias or motive. *See Hammer*, 296 S.W.3d at 561.[4]

---

[4] When making his claim that the district court erred by not admitting the evidence, Robisheaux primarily relies on *Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009). In *Hammer*, Hammer's defensive theory was that the alleged victim "made up a tale of sexual molestation to get out from under the heavy hand of her father [Hammer]." *Id.* at 566. Moreover, the jury was able to hear evidence that the victim never liked Hammer "because he disciplined her too much and yelled at her while doing so" and that she was angry with Hammer "because he wouldn't let her do whatever she wanted to," and Hammer was able to generally question her about any motive to falsely accuse him. *Id.* at 566-67. However, the trial court did not allow Hammer to introduce evidence showing that the alleged victim "was particularly angry with [Hammer] when he took her to the hospital for a sexual assault examination after she had run away from home," that she told the nurse examiner that Hammer "wants to prove that I had sexual intercourse with one of the guys that I ran away with," that she told the examiner that one of the guys had sexually assaulted her, that she told a family friend that she really had sex with her boyfriend instead but said that it was one of the guys who she ran away with because Hammer "was really strict about letting her see" her boyfriend, that she attempted to commit suicide after the examination, that she was admitted into a hospital for mental-health treatment, and that "[t]he charged offenses were alleged to have happened about a month after she was released." *Id.* at 567. The court of criminal appeals explained that this evidence was "strong support for [Hammer]'s theory" that the alleged victim "had a motive to falsely accuse him of sexual molestation" and demonstrated that the victim "was not above changing her

We review a trial court's ruling regarding the admission or exclusion of evidence for an abuse of discretion. *See Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). "The function of the balancing test of Rule 412(b)(3) is generally consistent with that under Rule 403," but "[t]he general balancing test under Rule 403 weighs in favor of the admissibility of evidence, while Rule 412(b)(3) weighs against the admissibility of evidence." *Stephens v. State*, 978 S.W.2d 728, 732-33 (Tex. App.—Austin 1998, pet. ref'd). "In light of the policies underlying Rule 412, the unfair prejudice language contemplates prejudice not only to the State, but also to the victim, who will potentially be stigmatized if the defendant is able to introduce evidence of prior sexual behavior." *Gotcher v. State*, 435 S.W.3d 367, 373 (Tex. App.—Texarkana 2014, no pet.). Moreover, "[t]he proponent of evidence in a Rule 412 setting bears the burden of establishing that the probative value outweighs the danger of unfair prejudice." *Id.* at 373-74.

In addition, "[t]he Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest,

story of a consensual sexual encounter with her boyfriend into a nonconsensual one with someone else to prevent her father from learning the truth and . . . punishing her for running away and having sex with" her boyfriend. *Id.* Ultimately, the court of criminal appeals ruled that the trial court abused its discretion by excluding the evidence. *Id.* at 569.

We believe that Robisheaux's reliance on *Hammer* is misplaced. As a preliminary matter, we note that the analysis in *Hammer* focused on Rule of Evidence 403. In addition, unlike *Hammer*, nothing in the record indicates that A.B. admitted to making any false sexual-abuse allegations. *See Hernandez v. State*, No. 03-13-00186-CR, 2014 Tex. App. LEXIS 13826, at *13-15 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op., not designated for publication) (distinguishing *Hammer*). More importantly, as detailed above, the evidence that Robisheaux wanted to admit was not strong evidence of a motive for A.B. to falsely claim that she had been sexually assaulted by Robisheaux and did not demonstrate a "definite and logical link" between A.B.'s outcry and a motive to fabricate allegations against Robisheaux. *See Stephens v. State*, 978 S.W.2d 728, 735 (Tex. App.—Austin 1998, pet. ref'd).

28

or motives in testifying." *Hammer*, 296 S.W.3d at 561. "This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination." *Id.*; *see Allen v. State*, 700 S.W.2d 924, 930-31 (Tex. Crim. App. 1985) (stating that "[t]here have been numerous attacks upon the so-called rape shield statutes as violative of the Sixth Amendment and these generally have been rejected" because "'the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process'" (quoting *North Carolina v. Fortney*, 269 S.E.2d 110, 113 (N.C. 1980))). In general, a trial court does not abuse its discretion by limiting a defendant's right to cross-examine witnesses under the Rules of Evidence, *Hammer*, 296 S.W.3d at 561, and there is a distinction between an attack on the general credibility of a witness and a more specific "attack on credibility that reveals 'possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand,'" *id.* at 562 (quoting *Davis v. Alaska*, 415 U.S. 308, 316 (1974)). Further, confrontation rights are violated only "if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory." *Id.* at 562-63. Accordingly, most questions regarding cross-examination may be resolved by looking to the Rules of Evidence, *id.* at 561, and "[c]ompliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence," *id.* at 566.

The potential probative value of the portion of C.Y.'s testimony at issue seems relatively minor. As set out above, when discussing the possibility that A.B. might have been involved with a twenty-year-old man from out of town, C.Y. emphasized that the only person who

29

told her that was Robisheaux and that A.B. never mentioned dating a twenty-year old. Moreover, C.Y. did not mention in her testimony finding any evidence to support the idea that A.B. had been dating a twenty-year-old man. Although C.Y. discussed finding text messages on A.B.'s phone from someone that she did not know, she also clarified that those texts were not sexual in nature. In addition, although C.Y. recalled finding a pregnancy test in A.B.'s room and although C.Y. testified that the warning Robisheaux gave her about a twenty-year old made her wonder if the pregnancy test had something to do with that unnamed man, C.Y. did not provide any further testimony potentially linking that test to a twenty-year-old man. On the contrary, C.Y. related that A.B. never mentioned being involved with a twenty-year-old man, and as discussed above, A.B. denied in a prior hearing being involved with a twenty-year old. Furthermore, C.Y. did not testify that she told A.B. that the twenty-year old would have to be punished for his actions. Accordingly, C.Y.'s testimony would provide little support for the idea that A.B. was involved with a twenty-year-old man or had a motive to falsely accuse Robisheaux of sexual assault in order to protect that man.

In contrast to the small probative force of the evidence, we believe that the admission of the evidence had the potential to unfairly prejudice the State's case. As set out above, even though C.Y. explained the reason for it, C.Y. did testify that she told the police that A.B may have been in a relationship with a twenty-year-old man from out of town. Accordingly, if the evidence was admitted during trial, it had the potential to undermine A.B.'s credibility, which was crucial in this case, and to support Robisheaux's defensive theory that this case was not thoroughly investigated. Moreover, those potential effects would have been unfairly prejudicial given the testimony from C.Y. establishing that the source of the information regarding the twenty-year old was Robisheaux

30

himself and given the complete lack of evidence regarding the existence of that man. Moreover, we must also bear in mind that this type of evidence had the potential to impact A.B. outside of the courtroom. *See Gotcher*, 435 S.W.3d at 373.

Given that Rule 412 favors exclusion rather than admission of evidence of a victim's past sexual behavior, that Robisheaux bore the burden of establishing the admissibility of the evidence, and that the potential prejudicial effect of the evidence outweighed the little probative force that it possessed, we cannot conclude that the district court abused its discretion by determining that the evidence should not be admitted under Rule of Evidence 412(b)(2)(C) as evidence relating to A.B.'s potential bias or motive.

Turning to Robisheaux's constitutional arguments, we do not believe that the ruling by the district court contravened Robisheaux's confrontation rights or impermissibly impaired his right to present a defense to the allegations against him. As set out above, in general, if a ruling is proper under the Rules of Evidence, the ruling will not violate a defendant's confrontation rights. *See Hammer*, 296 S.W.3d at 566. Moreover, although the right to confrontation includes the right to question a witness regarding his or her credibility or possible bias or motive, *see id.* at 561, we do not believe that the district court's ruling prohibiting cross-examination on a subject with little probative value was constitutionally infirm, particularly in light of the wide latitude trial courts are given regarding the scope of cross-examination and given that Robisheaux was able to attack A.B.'s credibility in other ways. *Id.*; *see also id.* at 568 (explaining that confrontation rights might have required admission of evidence if appellant had not been able to present "general defensive theory" through alternative testimony). Similarly, we cannot conclude that the district court's ruling deprived

31

Robisheaux of the opportunity to present a meaningful defense. *See Scheffer*, 523 U.S. at 329 n.16. In fact, as detailed in his second issue, Robisheaux was able to present a defense undermining A.B.'s credibility, pointing out inconsistencies in her allegations, and attacking the probability and logistics of those allegations actually having occurred, and the jury acquitted Robisheaux of the most serious of the charged offenses. Accordingly, we can find no deprivation of due-process rights or confrontation rights from the district court's decision to prohibit Robisheaux from questioning C.Y. about the pregnancy test and about the twenty-year-old man. *See Hernandez v. State*, No. 03 13-00186-CR, 2014 Tex. App. LEXIS 13826, at *16 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op., not designated for publication); *cf. James v. State*, No. 03-12-00462-CR, 2014 Tex. App. LEXIS 6994, at *17 (Tex. App.—Austin June 27, 2014, pet. ref'd) (mem. op., not designated for publication) (noting that there was "no evidence or indication that [victim's] brother was her assailant *instead* of appellant, only that he was possibly an *additional* assailant" and explaining that "[t]he dispositive issue is the absence of any connection made between her failure to report her brother's alleged assault to any issue relevant to the allegations against appellant").

For all of these reasons, we overrule Robisheaux's final issue on appeal.[5]

---

[5] In his brief, Robisheaux notes that Rule of Evidence 608 generally prohibits the admission of "specific instances of the witness's conduct in order to attack or support the witness's character for truthfulness." *See* Tex. R. Evid. 608. However, Robisheaux contends that Rule of Evidence 613(b) "creates an exception . . . and provides that a witness may be impeached using extrinsic evidence to show bias or interest." *See id.* R. 613(b) (setting out procedure for impeaching witness with statement purportedly showing witness's bias or interest). Although Robisheaux made one mention of Rule 613 during the Rule 412 hearing pertaining to C.Y., the district court made no ruling regarding whether the evidence was admissible under Rule 613, and Robisheaux did not request a ruling. *See* Tex. R. App. P. 33.1(a) (explaining that to preserve error for appeal, record must show that complaint was made to trial court and that trial court ruled on request or refused to rule and that "complaining party objected to the refusal"); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App.

**CONCLUSION**

Having overruled all of Robisheaux's issues on appeal, we affirm the district court's judgments of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   January 7, 2016

Publish

---

2002) (providing that appellate issue must comport with specific objection made at trial). Moreover, Robisheaux sought to admit the evidence through the testimony of C.Y., not A.B., and has not explained how the evidence concerning the pregnancy test and prior statements by C.Y. about a twenty-year old would have helped establish C.Y.'s bias or interest. *See* Tex. R. App. P. 38.1(i) (explaining that brief must contain clear and concise argument for contentions made).