# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00253-CR

**John D. Hamrick, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE COUNTY COURT AT LAW NO. 2 OF BELL COUNTY
NO. 2C13-02833, HONORABLE JOE CARROLL, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N[1]

A jury found John D. Hamrick guilty of assault with bodily injury, a Class A misdemeanor. *See* Tex. Penal Code § 22.01(a)(1). The trial court assessed punishment at 365 days in the county jail, suspended Hamrick's sentence, and placed Hamrick on community supervision for 24 months. In his sole appellate issue, Hamrick contends that the trial court abused its discretion in allowing him to be referred to by his nickname "Short Fuse" during trial. We will affirm the trial court's judgment of conviction.

---

[1]  The notice of appeal in this case was originally filed in this Court on September 2, 2016. The Supreme Court of Texas ordered the case transferred to the Eighth Court of Appeals. This Court transferred the case to our sister court on September 28, 2016. On April 12, 2018, the Supreme Court of Texas ordered this case, along with 38 other cases, transferred back to this Court. The Eighth Court of Appeals transferred the case back to this Court on April 16, 2018.

## BACKGROUND

In the information against Hamrick, the State alleged that Hamrick caused bodily injury to Dylan Edds by striking him about the head and face and body. Hamrick filed a motion in limine requesting that the trial court "instruct the Prosecuting Attorney and his assistants not to engage in any name-calling of the Defendant, but rather refer to him/her only by his/her Christian and surname, the 'Defendant' or the 'Accused'." The trial court granted the motion.

At trial, the State called Dylan Edds. Near the beginning of the State's direct examination, the prosecutor asked Dylan[2] who he was "out with" on the night of the alleged assault. Dylan replied, "Tyson Edds [Dylan's half-brother] and Short Fuse." Hamrick's attorney asked to approach the bench, and the court held a hearing outside the presence of the jury. At the hearing, the prosecutor requested that the court allow Hamrick to be referred to by his nickname, "Short Fuse." Hamrick's attorney opposed this request.

Dylan testified at the hearing outside the jury's presence that he had known Hamrick for about six months at that point and that they were friends. Dylan further testified, in relevant part, as follows:

> [Prosecutor:] And when you and Tyson and Mr. Hamrick talk to each other, what do you all call John Hamrick?
>
> [Dylan:] Short Fuse.
>
> [Prosecutor:] And how long has he been going by that name?

---

[2] Because three witnesses at trial were surnamed "Edds," we will refer to them by their given names for clarity.

[Dylan:]  As long as I have known him.

[Prosecutor:]  So y'all routinely call him Short Fuse in conversation?

[Dylan:]  Yes, sir.

[Prosecutor:]  And have you seen his Facebook?

[Dylan:]  Yes, sir.

[Prosecutor:]  And what does he use for a name on Facebook?

[Dylan:]  I haven't been on Facebook.  I think it was John Short Fuse Hamrick.  Something of that nature.

[Prosecutor:]  Have you seen pictures of him with Short Fuse on his shirt?

[Dylan:]  Yes, sir.

[Prosecutor:]  It's pretty routine that he goes by that name and uses that handle and no one thinks anything about it?

[Dylan:]  Depending on the company, but yes, sir.

[Prosecutor:]  Do members of your family call him Short Fuse?

[Dylan:]  That's all they know him by.  Or they've never met him, but that's all they've ever heard me call him.

[Prosecutor:]  We're talking about your mother?

[Dylan:]  Yes, sir.

[Prosecutor:]  Your grandmother?

[Dylan:]  Yes, sir.

[Prosecutor:]  Brett Edds [Dylan's father]?

[Dylan:]  Yes, sir.

[Prosecutor:]  They all know him by that name?

[Dylan:]  Yes, sir.

***

[Defense Attorney:]  It's pretty common for people with a short, quick temper, anger issues, or whatever, to say that person has a Short Fuse?

[Dylan:]  Yes, sir.

[Defense Attorney:]  Whether you mean it like that or not, do you have any understanding or opinion of whether or not that's where he got his nickname, Mr. Hamrick?

[Dylan:]  I don't.

[Defense Attorney:]  There have been occasions where you've had discussions or conversations or phone calls with Mr. Hamrick and not called him Short Fuse, right?

[Dylan:]  Yes, sir.

The trial court then stated, "Based on the evidence, I think that he can call him Short Fuse, if that's what they call him."  Hamrick's attorney clarified that he was making "a 402 and a 403 objection" and argued that the nickname "Short Fuse" was "immaterial" and "obviously an unfair prejudice."  After further discussion, the following exchange occurred:

[The Court:]  [B]asically what you're saying is you're stipulating that he is commonly referred to as that.

[Defense Attorney:]  Correct.

[The Court:]  Well, if you're stipulating that he is commonly referred to as Short Fuse, then I'm going to Overrule the objection.  If he's commonly referred to as that, I don't think that the probative value is outweighed, I don't think the prejudicial effect is outweighed by the probative value [sic].

In fact that's what everybody calls him, that's what everybody calls them.  So let's go ahead and try the case.

4

***

> [The Court:] And I understand the prejudicial effect of that and I would not have let [the prosecutor] use that, except that the evidence is the stipulation he's just always referred to as that. That's his name, so that's what they'll call him.

The jury returned, and the State continued its examination of Dylan. Dylan testified that he, his half-brother Tyson, and Hamrick went to Sixth Street in Austin, drank alcoholic beverages, and then began driving back to Bell County in the early morning hours. Dylan further testified that "Short Fuse and Tyson" were "agitated" because they were buying Dylan's drinks and because Dylan "was going through a separation from [his] wife." Then, according to Dylan, "Short Fuse made a statement, pulled the car over and had a cigarette to calm down." Dylan testified that his argument with Hamrick continued outside the car:

> He asked me, "Do you think you're a bad motherfucker?" I said, "No, I just haven't had my ass whipped yet." He said, "Well, I am a bad motherfucker." And he said, "You fucked me over and you fucked your brother over."
>
> At this time I looked at my brother and I was hit. And then I came to.

Dylan testified that, after he regained consciousness, he eventually went to a hospital to be treated for his injuries, which included "mandibular separation" and "fractures on the side of [his] face." After Dylan's testimony, the State rested.

Hamrick called several witnesses, including Dylan's grandmother, Brett Edds (who was Dylan's father and an officer with the Bell County Sheriff's Department), two other officers with the Bell County Sheriff's Department, and Tyson Edds. Tyson testified that there was an altercation between Hamrick and Dylan on the way back from Austin. Much of the evidence that

5

Hamrick's attorney elicited from the witnesses he called concerned whether the assault occurred in Bell County or elsewhere.

After hearing the evidence, the jury found Hamrick guilty of assault with bodily injury. The trial court later assessed punishment, and this appeal followed.

## STANDARD OF REVIEW

"We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard." *Gonzalez v. State*, PD-0181-17, 2018 WL 1736689, at *5 (Tex. Crim. App. Apr. 11, 2018); *Robisheaux v. State*, 483 S.W.3d 205, 217 (Tex. App.—Austin 2016, pet. ref'd). "A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement." *Gonzalez*, 2018 WL 1736689, at *5. "We may not substitute our own decision for that of the trial court." *Id.*

## DISCUSSION

In his sole appellate issue, Hamrick contends that the trial court abused its discretion in allowing the use of his nickname "Short Fuse" because the nickname was irrelevant, *see* Tex. R. Evid. 402 ("Irrelevant evidence is not admissible."), and highly prejudicial, *see id.* R. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . .").

For purposes of our analysis, we will assume, without deciding, that Hamrick's nickname was inadmissible. Nevertheless, we must disregard this assumed error unless it affected

6

Hamrick's "substantial rights." *See* Tex. R. App. P. 44.2(b) ("Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). "Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but slight effect." *Campbell v. State*, 382 S.W.3d 545, 553 (Tex. App.—Austin 2012, no pet.).

At trial, the only issue that Hamrick meaningfully contested was where the assault occurred. Hamrick argued that the State had failed to prove that the assault happened in Bell County, where the case was tried. During closing argument, Hamrick's attorney stated, "The first date is February 13th, there was a fight, there was a punch, there was an injury. We know that that's when there was a[n] altercation." Throughout his closing, Hamrick's attorney did not discuss whether Hamrick assaulted Dylan. Instead, he discussed the conflicting evidence about the assault's location. He emphasized that the location was the central question in the case:

> Now, why do I talk about any of this? Because the law says that we talked about that they must provide proof to you by a preponderance of the evidence that this happened in Bell County.
>
> And to look at the timeline and look at the inconsistencies. Even on a more likely than not standard, that's the key, that's all that's really in dispute.
>
> You know, whether or not the verdict Guilty or Not Guilty is just dependent on that question, more likely than not.

7

At trial, neither side presented any evidence that someone other than Hamrick caused Dylan's injuries. In addition, the trial court did not submit a self-defense instruction to the jury.

Because the location of the assault was "all that's really in dispute," the use of Hamrick's nickname was unlikely to have "a substantial and injurious effect or influence in determining the jury's verdict." *See Schmutz*, 440 S.W.3d at 39. Hamrick's nickname was simply not implicated in the jury's determination of whether the assault occurred in Bell County.[3] In light of the overwhelming and uncontroverted evidence that Hamrick assaulted Dylan, including the testimony of Dylan and Tyson, photographs of Dylan's injuries, and Dylan's medical records, "we have fair assurance" that the trial court's admission of Hamrick's nickname "did not influence the jury, or had but slight effect." *See Campbell*, 382 S.W.3d at 553. Accordingly, we conclude that any error the trial court may have committed in allowing the use of Hamrick's nickname did not affect Hamrick's substantial rights, and we overrule his sole appellate issue.[4]

### CONCLUSION

We affirm the trial court's judgment of conviction.

---

[3] In attempting to demonstrate prejudice, Hamrick relies heavily on the prosecutor's use of Hamrick's nickname during closing argument. The prosecutor used the name "Short Fuse" twice during closing argument. Nevertheless, the prejudice potentially caused by this use of "Short Fuse" would apply only to the jury's determination of whether Hamrick assaulted Dylan, which was not meaningfully contested, not where the assault occurred.

[4] Given our disposition of this issue, we need not address the State's assertion that Hamrick waived his appellate issue.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed:   May 24, 2018

Do Not Publish