**Opinion filed July 26, 2018**



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00065-CR

_____

## CARLOS JIMENEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 42nd District Court**

**Taylor County, Texas**

**Trial Court Cause No. 26124A**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant guilty of the first-degree felony offense of continuous sexual abuse of a child.[1]  Appellant elected for the trial court to assess punishment; the trial court assessed punishment at confinement for fifty years and sentenced Appellant.  In a single issue on appeal, Appellant argues that the trial court

---

[1]*See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2017).

abused its discretion when, under Article 38.37 of the Texas Code of Criminal Procedure, it admitted extraneous-offense evidence.[2] We affirm.

## I. *Charged Offense*

The grand jury returned an indictment against Appellant for one count of continuous sexual abuse of a child. The indictment alleged that Appellant was more than seventeen years of age and committed two or more acts of sexual abuse against C.M., a child younger than fourteen years of age, during a period that was thirty days or more in duration. The acts of sexual abuse that the State alleged that Appellant committed were four acts of aggravated sexual assault: (1) that Appellant caused contact with and penetrated C.M.'s sexual organ with his finger; (2) that Appellant caused contact with and penetrated C.M.'s sexual organ with his mouth; (3) that Appellant caused his sexual organ to contact and penetrate C.M.'s mouth; and (4) that Appellant caused contact with and penetrated C.M.'s anus with his finger.

## II. *Evidence at Trial*

C.M., who was twelve years old at the time of trial, is the victim in this case. Appellant is C.M.'s step-grandfather.

### A. *C.M. testified about Appellant's sexual abuse.*

At trial, C.M. testified that Appellant put his sexual organ in her mouth "[a] lot" and "for as long as I can remember," that he forced her to touch his sexual organ with her hands, that he licked her sexual organ "[a] lot," and that he put his fingers in her sexual organ "[a] few" times. She also testified that Appellant put his finger in her anus "[m]any" times, that he touched her breasts "[s]ometimes over and sometimes under" her clothes, and that "[s]ometimes" he would kiss her on the lips.

C.M. testified that these sexual acts occurred when she would go to Abilene to visit her biological grandmother, to whom Appellant was married. C.M. visited

---

[2]*See* TEX. CODE CRIM. PROC. ANN. art. 38.37 (West 2018).

2

them "[a]t least one week in the summer and sometimes during the spring break," or about three times a year. When she did visit, she would generally stay for a period of three to seven days. According to C.M., Appellant sexually abused her over the course of more than three summers and "for as long as [she could] remember."

*B. C.M.'s mother and grandmother testified about C.M.'s outcry.*

C.M. was nine years old when she told her grandmother and mother about what Appellant had done and was doing to her. C.M.'s grandmother testified that, one night in 2014 while C.M. stayed with her and Appellant, C.M. told her that Appellant was "doing things to me, things I don't like." C.M. spoke with her mother on the phone and told her that Appellant "has been doing dirty things to me." She told her mother that Appellant had been touching her "on her vagina and on her butt hole." C.M.'s mother then called the police.

*C. Officer Becker testified, and the State introduced a partial confession from Appellant.*

Officer Adam Becker, who was a detective with the Crimes against Children Unit at the Abilene Police Department, interviewed Appellant after he was arrested. The State introduced the interview into evidence and presented Officer Becker as a witness. In Appellant's interview, he admitted that he "probably did something to" C.M. Appellant specified: "I licked her," and Officer Becker asked, "You licked her on the vagina?" Appellant nodded his head affirmatively. Officer Becker asked how many times he did this, and Appellant said, "[T]wo or three times maybe." Officer Becker then said: "So at least two times, maybe three," to which Appellant responded, "Yes, sir, I don't remember." Officer Becker then asked, "More than once?" Appellant said, "[p]robably, I don't remember."

Because of Appellant's equivocal responses, Officer Becker asked him to clarify how many times he had licked C.M.'s sexual organ. Appellant again said that he did not remember, but he then admitted, without equivocation, "I did it one

3

time, I know." He explained that she was "about seven years old." Appellant specified that he had been drinking. He explained that C.M. got out of the shower and had her towel wrapped around her and that then "she dropped her towel and that was it." Appellant said that he thought it happened on the bed, and he stated that "it couldn't have been long because [his wife] was in the other room." Appellant did not remember touching C.M.'s breast, making C.M. touch his sexual organ with her hand, placing his sexual organ in C.M.'s mouth, or touching her sexual organ or her anus with his fingers.

> ### D. K.V. and A.V., Appellant's other step-grandchildren, testified that Appellant sexually abused them as children.

Like C.M., K.V. and A.V. are step-grandchildren of Appellant. K.V., who was twenty-two years old at the time of trial, and A.V., who was twenty-four years old at the time of trial, both testified that Appellant sexually abused them when they would stay with their grandmother and Appellant in Abilene. K.V. testified that Appellant sexually abused her over fifty times and that some of those incidents occurred when she was "about eight or nine." A.V. testified that she was younger than ten years old when the abuse occurred, and she said that it stopped when she was about twelve. K.V. and A.V. both testified that Appellant touched their sexual organs and breasts, performed oral sex on them, and made them touch his sexual organ.

> ### E. Appellant's defense

In closing argument, defense counsel argued that the State did not prove that Appellant had the "conscious objective or desire" to commit the offense of continuous sexual abuse of a child. Defense counsel also suggested that Appellant may have been intoxicated during his interview with Officer Becker and may not have been in the "correct state of mind" during the interview. Defense counsel also emphasized that Appellant's "confession is not a confession wherein [Appellant]

4

makes any confession with regard to the actual allegation in the indictment, which is continuous sexual abuse of a child." Defense counsel further highlighted alleged inconsistencies in the testimony about C.M.'s outcry.

### III. *Analysis*

Appellant argues, in a single issue, that the trial court abused its discretion when it admitted extraneous-offense evidence under Article 38.37. In this case, the trial court admitted the extraneous evidence under Article 38.37 and Rule 404(b). For Article 38.37, the trial court stated that "[the] evidence shall be admitted for its bearing on relevant matters, including the state of mind of the Defendant and the previous and subsequent relationship between the Defendant and the child." Because Appellant only challenged the admissibility under Article 38.37 and Rule 403, we limit our analysis to the former.

Article 38.37, section 2, provides for the admission of evidence of other sex crimes committed by the defendant against children other than the victim of the alleged offense "for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant." CRIM. PROC. art. 38.37, § 2(b). Evidence of an individual's bad character is generally not admissible to show that he acted in conformity therewith, *see* TEX. R. EVID. 404, but when a defendant is charged with continuous sexual abuse of a child, evidence of extraneous acts may be admissible under Article 38.37. CRIM. PROC. art. 38.37, § 2(a), (b). Evidence admissible under Article 38.37 can, however, still be excluded under Rule 403 of the Texas Rules of Evidence if its "probative value is *substantially outweighed* by its prejudicial value." *Walker v. State*, 4 S.W.3d 98, 102–03 (Tex. App.—Waco 1999, pet. ref'd). Appellant claims that the testimony of K.V. and A.V. should have been excluded under Rule 403 as unduly prejudicial.

The Texas Court of Criminal Appeals has noted that "Rule 403 creates a presumption of admissibility of all relevant evidence and authorizes a trial judge to

exclude such evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999). Under Rule 403, a trial court may exclude evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. TEX. R. EVID. 403. When a trial court conducts a Rule 403 analysis, it should balance:

> (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We review a trial court's ruling on the admission of extraneous-offense evidence under an abuse of discretion standard. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). "When a trial court's ruling on the admissibility of evidence is correct, even though for the wrong reason, the ruling must be affirmed." *Salas v. State*, 629 S.W.2d 796, 799 (Tex. App.—Houston [14th Dist.] 1981, no pet.).

> *A. The extraneous evidence, although remote, was probative due to its similarity to the charged offense.*

How probative the extraneous-offense evidence is in the trial of the underlying offense is, in part, "a function of the similarity of the extraneous transaction to the charged offense." *Montgomery v. State*, 810 S.W.2d 372, 389–90 (Tex. Crim. App. 1991) (op. on reh'g). The extraneous acts that the State adduced at trial were allegations that Appellant continuously sexually assaulted his other step-granddaughters over the course of several years when they would visit Appellant

6

and their grandmother in Abilene. The charged offense in this case involves C.M., Appellant's step-granddaughter, who alleged that Appellant continuously sexually assaulted her over the course of a few years when she would visit Appellant and her grandmother in Abilene. C.M.'s testimony reflects that, when Appellant performed these sexual acts, she was around the same age as K.V. and A.V., around ages eight and nine, when they were allegedly molested. Also, the charged offense and the extraneous offenses involve strikingly similar allegations: that Appellant touched their breasts and vagina and performed oral sex on them.[3] The similarity with the charged offense tends to make the extraneous evidence probative. *See Bradshaw v. State*, 466 S.W.3d 875, 883 (Tex. App.—Texarkana 2015, pet. ref'd).

However, K.V. and A.V. testified about conduct that Appellant allegedly committed over ten years prior to trial. Remoteness of an extraneous offense can "significantly lessen" the probative value attributed to it. *Gaytan v. State*, 331 S.W.3d 218, 226 (Tex. App.—Austin 2011, pet. ref'd); *see Robisheaux v. State*, 483 S.W.3d 205, 219 (Tex. App.—Austin 2016, pet. ref'd) (probative value lessened because "the extraneous offenses at issue occurred over a two-year period and started twelve years before the offenses alleged in the indictments and fourteen years before the underlying trial"). Although the extraneous offenses presented by the State in this case were remote, this factor still "slightly" favors admissibility. *See Newton v. State*, 301 S.W.3d 315, 317, 320 (Tex. App.—Waco 2009, pet. ref'd) (where extraneous offense and charged offense involved sexual acts against stepdaughters over the course of several years, court concluded that probative force of the evidence "slightly" favored admissibility).

---

[3] K.V. and A.V. both testified that Appellant propositioned them to perform oral sex on him. They testified that they did not.

*B. The State needed the evidence to prove the charged offense and to rebut Appellant's defensive theories; however, the State's need was lessened by Appellant's partial confession.*

Appellant argues that the State did not need the extraneous-offense evidence because the State had "two outcry witnesses, the child victim, a video confession, and a police officer." The State argues that it needed the evidence because, with regard to Appellant's confession, he "admits only to one act of sexual abuse against C.M. and does not admit to the offense of continuous sexual abuse [of a child]." The State also notes that it was concerned that Appellant "would claim that he was intoxicated" during the interview. "The State's need for the testimony involves consideration of the record at the time of the offer and the purposes for which Article 38.37 allows its consideration." *Allred v. State*, No. 11-04-00026-CR, 2006 WL 1029083, at *5 (Tex. App.—Eastland, pet. ref'd) (not designated for publication); *see Whitehead v. State*, 130 S.W.3d 866, 872 (Tex. Crim. App. 2004) ("[A]n appellate court's review of the record itself is generally limited to evidence before the trial court at the time of the trial court's ruling.").

At the time the extraneous evidence was offered, the State told the trial court that Appellant's confession, although not introduced into evidence yet, was only a partial confession. The State said that Appellant only "confesses to licking [C.M.] one time" and that "[the State] fully anticipate[s] him attacking saying he was either drunk when he gave the confession or something." Prior to this, the defense had also elicited testimony from the grandmother on cross-examination that Appellant was an alcoholic, that he drank alcohol on a regular basis, and that he regularly fell down drunk and would not remember afterwards.

The record reflects that the trial court could have reasonably concluded that the State needed the extraneous evidence to rebut the evidence that suggested Appellant's daily consumption of alcohol played a role in his defense. The defense

subsequently asserted in closing argument that Appellant's excessive alcohol consumption played a role in his defense. As we explained above, Appellant, in an attempt to discredit his partial confession, argued that he was not in the "correct state of mind" during the interview because he may have been intoxicated.

The trial court also could have reasoned that the State needed the extraneous evidence to prove, and help corroborate, the other three acts of aggravated sexual assault alleged in the indictment. The offense of continuous sexual abuse of a child requires the State to prove that Appellant committed two or more acts of "sexual abuse" during a period of thirty days or more. PENAL § 21.02(b). As charged in the indictment, the State sought to prove that Appellant committed two or more acts of sexual abuse by proving that Appellant committed four acts of aggravated sexual assault. During the interview, Appellant only confessed to one of the alleged acts of aggravated sexual assault—that he caused his mouth to contact C.M.'s sexual organ. Appellant said he did not remember touching C.M.'s sexual organ and anus with his finger and placing his sexual organ in C.M.'s mouth—the other three acts of aggravated sexual assault alleged in the indictment. Although the trial court had not seen the confession at the time it admitted the extraneous evidence, the State made the trial court aware that it was a partial confession.

The State also needed the evidence because defense counsel attempted to impeach C.M.'s mother and C.M. on cross-examination, specifically with regard to the events and timeline surrounding C.M.'s outcry. For example, on cross-examination of C.M.'s mother, the defense questioned whether in fact C.M. used the word "vagina" when C.M. told her mother what Appellant had been doing to her. When C.M. was cross-examined, the defense questioned C.M. about receiving mental health treatment prior to her outcry. The defense's line of questioning suggested that C.M. may have been coached by her therapist to refer to her "private

parts" as her "vagina."[4]  From this, the trial court also could have reasoned that the defense was challenging C.M.'s and C.M.'s mother's credibility.  Consequently, the State needed the extraneous evidence.  *See Robisheaux*, 483 S.W.3d at 220 (defense brought up the child-victim's prior mental-health treatment); *Allred*, 2006 WL 1029083, at *5 (defense challenged child-victim's credibility in opening statement).

"[T]he primary piece of evidence in most child sexual abuse cases is a traumatized child."  *Bradshaw*, 466 S.W.3d at 884.  Although the State's need for the extraneous evidence was lessened by Appellant's partial confession, the other act of sexual abuse that the State needed to prove came down to C.M.'s word versus Appellant's.  The outcry witnesses, C.M.'s mother and grandmother, simply repeated what C.M. had told them about Appellant, and Officer Becker repeated what Appellant confessed to during the interview.  Their testimony did not provide any corroboration for the other three acts of aggravated sexual assault alleged in the indictment, which Appellant said he did not remember doing.  *See Robisheaux*, 483 S.W.3d at 220 (medical reports, medical personnel, and outcry witness "essentially simply repeated" what the child-victim had told them about the defendant's sexual abuse (citing *Gaytan*, 331 S.W.3d at 227)).  Exclusion of evidence under Rule 403 "should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such 'he said, she said' cases."  *Hammer v. State*, 296 S.W.3d 555, 561–62 (Tex. Crim. App. 2009).  Although the State's need was lessened because of the partial confession, we note that the State's need was heightened because Appellant tried to discredit his partial confession and asserted other defensive theories.  As a result, we think that the factor is, on balance, neutral.

---

[4]The defense suggested in closing argument that C.M. had been "working on what to say" because "she has now been counseled every week with the same counselor that she had prior to the allegations of sexual abuse."

*C. The extraneous evidence, because of its inflammatory nature, suggested to the jury an improper decision.*

Sexual misconduct involving children is "inherently inflammatory." *Montgomery*, 810 S.W.2d at 397. Appellant suggests that the inflammatory nature of the extraneous-offense evidence in this case suggested a verdict on an improper basis. Unfair prejudice may occur when a jury is tempted to find "guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). Evidence may be unfairly prejudicial when such evidence inflames "the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641. Our sister courts have noted that the inflammatory nature of extraneous sexual acts involving children can be unfairly prejudicial and suggest to the jury a decision on an improper basis. *See, e.g.*, *Robisheaux*, 483 S.W.3d at 220; *Bradshaw*, 466 S.W.3d at 883; *Newton*, 301 S.W.3d at 320. We note, however, that the trial court included a limiting instruction in the jury charge, which mitigated the improper influence of the extraneous evidence. *See Newton*, 301 S.W.3d at 320; *Gaytan*, 331 S.W.3d at 228. We note that this factor favors exclusion of the extraneous evidence. *See Newton*, 301 S.W.3d at 320; *Gaytan*, 331 S.W.3d at 228.

*D. The extraneous evidence did not confuse or distract the jury from the main issue; therefore, this factor favors admission.*

"[C]onfusion of the issues" may arise where the evidence confuses or distracts "the jury from the main issues in the case." *Gigliobianco*, 210 S.W.3d at 641. K.V.'s and A.V.'s testimony was "straightforward and directly relevant to the only issue in this case, namely whether" Appellant abused C.M. *See Gaytan*, 331 S.W.3d at 228. We note that this factor favors admission of the extraneous evidence. *See id.*

11

*E. The extraneous evidence did not have a tendency to be given undue weight by the jury because it was easily comprehensible; therefore, this factor favors admission.*

"[M]isleading the jury" means that an item of evidence is "given undue weight by the jury on other than emotional grounds." *Gigliobianco*, 210 S.W.3d at 641. K.V.'s and A.V.'s testimony was "easily comprehensible by laypeople," so their testimony did not tend to mislead the jury, unlike scientific evidence. *See Gaytan*, 331 S.W.3d at 228 (because extraneous evidence was "easily compressible," and not scientific, this supported admissibility of the evidence); *see also Gigliobianco*, 210 S.W.3d at 641 ("'[S]cientific' evidence might mislead a jury that is not properly equipped to judge the probative force of the evidence."). This factor favors admission of the evidence.

*F. More than one-fourth of the total time at trial, including the State's time for developing the extraneous testimony and the defendant's rebuttal, was dedicated to the extraneous testimony.*

This factor concerns "the efficiency of the trial proceeding." *Gigliobianco*, 201 S.W.3d at 641; *see* TEX. R. EVID. 403 (balancing test requires an analysis of whether the evidence causes "undue delay" or "needlessly present[s] cumulative evidence"). We consider the "time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense." *Mechler*, 153 S.W.3d at 441. Specifically, we examine the testimony at trial dedicated to developing the extraneous offenses, "including cross-examination, redirect examination, etc. and any rebuttal offered by the defense in response to the extraneous-offense evidence." *Newton*, 301 S.W.3d at 321. "We do not include, however, hearings conducted outside of the jury's presence or jury argument." *Id.* We note that, to quantify the time dedicated to developing the extraneous testimony, our sister courts have considered the number of pages in the record dedicated to

developing the extraneous testimony.  *See id.*; *Gaytan*, 331 S.W.3d at 228.  *But see Newton*, 301 S.W.3d at 322 (Gray, C.J., concurring) (disapproving of this approach).

The State presented six witnesses at trial.  Two of those witnesses, K.V. and A.V., exclusively testified about the extraneous offenses.  Their direct examinations and cross-examinations spanned eighteen pages out of seventy-five pages of testimony offered during the guilt/innocence phase of trial.  C.M.'s grandmother, who was recalled by the defense during its case-in-chief, testified about a prior investigation of Appellant that involved A.V. and K.V.  *See Newton*, 301 S.W.3d at 321 n.6 (holding that the testimony of Appellant, which was offered in rebuttal to the State's extraneous evidence, was included in the time dedicated by the State to developing the extraneous evidence).  The defense and the State questioned C.M.'s grandmother on this topic—as reflected in about five pages of the record.  Accordingly, the time dedicated to developing the extraneous-offense evidence amounted to twenty-three pages out of seventy-five pages of testimony for the guilt/innocence phase of trial, or about thirty percent.  We also note, however, that the extraneous evidence was not cumulative because it did not "merely repeat evidence already admitted."  *Newton*, 301 S.W.3d at 320 n.5.  Nevertheless, we conclude that this factor favors exclusion.  *See id.* at 321 (time dedicated to developing the extraneous-offense evidence was twenty-seven percent).

## IV. *Conclusion*

The trial court did not abuse its discretion when it admitted the extraneous-offense evidence under Article 38.37.  The balance of the factors reflects that there is not a clear disparity between the degree of prejudice and the probative value attributed to it.  *See Newton*, 301 S.W.3d at 321–22 (half the factors favored exclusion and half the factors favored admission; trial court did not abuse discretion by admitting the extraneous evidence).  Only factors three and six favored exclusion of the evidence, while factors one, four, and five favored admission—with factor

two being neutral.  Appellant has not overcome the presumption of admissibility under Rule 403; accordingly, the trial court did not abuse its discretion in admitting the extraneous evidence.  *Cf. Allred*, 2006 WL 1029083, at *1, 6 (extraneous testimony admissible under Article 38.37, section 1, even though the State had DNA evidence connecting the defendant to the offense of aggravated sexual assault).  We overrule Appellant's sole issue.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

July 26, 2018

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[5]

---

[5]Jim R. Wright, Senior Chief Justice (retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.