# NO. 12-24-00025-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAVID MICHAEL THOMPSON,* *APPELLANT* | § | *APPEAL FROM THE 475TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

David Michael Thompson appeals his conviction for murder. He raises two issues on appeal, both challenging the admissibility of evidence. We affirm.

### BACKGROUND

Appellant was indicted for murder with a deadly weapon. Appellant declined to enter a plea to the offense, and consequently, the trial court entered a "not guilty" plea on his behalf. The case proceeded to a jury trial.

The evidence at trial showed that Keith Upchurch and Appellant were roommates. Upchurch described the relationship between Appellant and his girlfriend Jaci Wilkerson as "pretty rocky," and at least twice before led to law enforcement interventions. A day or two before Wilkerson's murder on May 25, 2022, Upchurch went out-of-town for medical treatments, and, as

he returned to the residence he shared with Appellant, he received a telephone call from Appellant asking him not to return home until the following day. But Upchurch already commenced his return trip and continued home.

Upchurch arrived home, and having taken sleeping medication, went to sleep without seeing Appellant or Wilkerson. At one point, after Upchurch awoke twice to use the bathroom, he received a text message from Appellant stating, "I'm sorry you had to be there." Thinking Appellant stepped out of the house to smoke, Upchurch walked out of his bedroom and discovered Wilkerson, lying naked in a "huge puddle of blood."

Upchurch immediately called 911. Several Tyler Police Department officers responded, and each provided a gruesome description of the crime scene. Lieutenant Adam Tarrant described the crime scene as "the worst I've ever seen," and described a bloody bedroom pillow, a bloody machete, and major head and neck trauma to Wilkerson. Detective Amber Thomas described seeing pooled blood around Wilkerson's body, blood spatter on the ceiling and blinds, and a machete that appeared to have blood and "matter" on it. Crime Scene Investigator John Stone described in detail blood spatters on "every surface in there" and a blood trail down a hallway. Detective Rebekah Hutson observed blood "all over the living room." Sergeant Jeffery Rackliff described blood on the sidewalk and in the foyer and stated "it looked like a movie set. It was incredibly graphic." Rackliff also described Wilkerson's head injury as "grievous" with blood and brain tissue on the floor. Detective Jamie Tarrant described the scene as the "worst thing I've ever seen." Detective Tarrant also obtained photographs of the scene including graphic photographs of Wilkerson.

The next day, Appellant called from a motel and turned himself in to police. At the station, he was unapologetic but cooperative as he told police: (1) he used a machete and hammer to kill Wilkerson after having sex with her; (2) he killed her because she cheated on him with a man of a different race and reported him for violating a protective order; and (3) where he disposed of certain evidence in different locations, including three cell phones and a mini-sledgehammer used to commit the murder. The authorities recovered these items of evidence where Appellant said they could be found.

The jury found Appellant "guilty" of murder and made an affirmative finding that he used a deadly weapon during the commission of the offense. After a punishment hearing, the jury sentenced Appellant to life imprisonment. This appeal followed.

2

In his first issue, Appellant contends that the trial court abused its discretion when it admitted evidence of two extraneous offenses arising from his conduct against the decedent, namely an assault and a violation of a protective order shortly before her murder.

## Standard of Review

We review a trial court's ruling on the admissibility of extraneous offenses under an abuse of discretion standard. *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). We will not reverse the trial court unless a clear abuse of discretion is shown. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). If the trial court's decision is within the zone of reasonable disagreement, the trial court has not abused its discretion, and we will uphold the trial court's ruling. *De La Paz*, 279 S.W.3d at 343–44. A trial court's ruling that admits extraneous acts is generally within the zone of reasonable disagreement if the evidence shows that "1) an extraneous transaction is relevant to a material, non-propensity issue, and 2) the probative value of that evidence is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." *Id.* at 344. Furthermore, the trial court's evidentiary ruling will not be disturbed if it is correct on any theory of law applicable to that ruling. *Id.*

## Applicable Law

The trial court allowed evidence of the prior assault and violation of the protective order under Texas Code of Criminal Procedure Article 38.36, and for the purposes of showing Appellant's motive. Article 38.36 states that

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. Art. 38.36(a) (West 2018). Article 38.36 evidence must also meet the requirements of the rules of evidence. *See Garcia v. State*, 201 S.W.3d 695, 702-703 (Tex. Crim. App. 2006). Thus, evidence admitted pursuant to Article 38.36 is still subject to the requirements of evidentiary Rules 404(b) and 403. When the relationship between the victim and accused is a material issue, illustrating the nature of the relationship may be the purpose for which evidence of prior bad acts will be admissible under Rule 404(b). *See id.* at 703.

Rule 404(b) allows the admission of evidence of other crimes, wrongs, or acts for purposes other than to "prove [the] character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b); *Montgomery v. State*, 810 S.W.2d 372, 387–88 (Tex. Crim. App. 1990). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b). Whether extraneous offense evidence has relevance other than for character conformity is a question for the trial court. *De La Paz*, 279 S.W.3d at 343.

**Discussion**

During his confession, Appellant described two extraneous prior bad acts including his assault of Wilkerson and his violation of a protective order against Wilkerson shortly before her murder. Appellant sought to exclude this evidence because, he argues, the jury already knew that they had a tumultuous relationship and that he murdered Wilkerson. Accordingly, his argument continues, the evidence was offered only to show that he acted in conformity with his character in violation of Rule 404(b).[1] We disagree.

At trial, Appellant did not contest the admissibility of these incidents under Article 38.36, but instead, he challenged their admissibility under Rule 404(b) without providing any authority. In *Brock v. State*, a case relied upon by the State, the court held evidence of prior offenses by the defendant against the victim was admissible as circumstantial evidence of motive for murdering her. *Brock v. State*, 275 S.W.3d 586, 589-90 (Tex. App.—Amarillo 2008, pet. ref'd). There, two of the incidents occurred within two months of the victim's murder, both of which arose from her final separation from him. *Id.* at 589. One incident caused the defendant to lose his job, and three other incidents, while more remote in time, also served to explain how the defendant, who was the victim's husband of five years and father of two of her children, became motivated to kill her. *Id.* at 589-90. Although the State is not required to prove that Appellant had a motive for killing Wilkerson, such evidence is generally admissible as a circumstance tending to prove guilt. *See Clayton v. State*, 235 S.W.3d 772, 781 (Tex. Crim. App. 2007).

Here, Appellant provided evidence of the extraneous offenses during his confession as part of his motive for murdering Wilkerson. He previously assaulted Wilkerson and violated the

---

[1] Appellant did not lodge an objection to the extraneous offense evidence under Texas Rule of Evidence 403. *See Bradshaw v. State*, 466 S.W.3d 875, 882 (Tex. App.—Texarkana 2015, pet. ref'd) (providing that appellant failed to preserve the issue for review by failing to lodge a Rule 403 objection to his extraneous offense evidence at trial).

protective order put in place to protect her shortly before murdering her. He explained his belief that the victim reported the protective order violation and blamed her for his recent jailing, inferring that he was angry with her, which provided part of his motivation to kill her. Similar to *Brock*, this evidence shows a proper purpose other than character conformity, namely Appellant's motive to kill Wilkerson. *See Brock*, 275 S.W.3d at 590 ("Although motive is not an essential element of murder, evidence of motive is admissible because it is a circumstance tending to prove the commission of the offense.").

Even if we reviewed the admission of the offenses under Rule 403, we would conclude that Appellant was not harmed thereby. The extraneous offense evidence involved an incident much less serious than the murder already at issue; therefore, the trial court could conclude that the extraneous offenses did not tend to suggest a decision on an improper or emotional basis instead of a rational basis. *See Robisheaux v. State*, 483 S.W.3d 205, 220 (Tex. App.—Austin 2016, pet. ref'd). The evidence was not likely to confuse or distract the jury from the main issues in the case, as the trial court provided a limiting instruction detailing under what circumstances, and for what purposes, the jury could consider the extraneous offenses. *See Gaytan v. State*, 331 S.W.3d 218, 228 (Tex. App.—Austin 2011, pet. ref'd) (appellate court presumes jury obeyed limiting instructions). The evidence was neither scientific nor complex, was presented by a lay witness in a factual manner, and the record contains nothing to suggest that the jury was either unequipped to evaluate said evidence or likely to assign it undue weight. *James v. State*, 623 S.W.3d 533, 550 (Tex. App.—Fort Worth 2021, no pet.). Finally, Appellant does not assert that the presentation of the disputed evidence was inordinately lengthy or repetitive of other evidence. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006).

Reviewing the record as a whole and giving due deference to the trial court, we cannot say it abused its discretion in finding the danger of unfair prejudice did not substantially outweigh the probative nature of the State's extraneous offense evidence. Thus, the trial court's decision to admit the extraneous offenses fell within the zone of reasonable disagreement.

We overrule Appellant's first issue.

### PHOTOGRAPHIC EVIDENCE

Appellant contends in his second issue that the trial court erred by admitting, over his objection, State's Exhibits 11 through 15, which depict the victim and her injuries at the crime

scene.

**Standard of Review and Applicable Law**

A trial court's ruling on the admissibility of photographic evidence is reviewed under an abuse of discretion standard. *Prible v. State*, 175 S.W.3d 724, 734 (Tex. Crim. App. 2005). Again, so long as the trial court's decision is within the zone of reasonable disagreement, we will not disturb it on appeal. *De La Paz*, 279 S.W.3d at 343–44.

Generally speaking, "if a verbal description of the body and the scene would be admissible, a photograph depicting the same is admissible." *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). But this rule is not absolute—Rule 403 requires that a photograph have some probative value and that its probative value not be substantially outweighed by its inflammatory nature. TEX. R. EVID. 403; *see Erazo*, 144 S.W.3d at 491–92 ("If there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects."). If a photograph is competent, material and relevant to the issue at trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury. *Erazo*, 144 S.W.3d at 489.

The trial court must also balance between the probative value of the evidence and the counter factors set out in Rule 403, although that balance is slanted toward the admission of otherwise relevant evidence. *Hammer v. State*, 296 S.W.3d 555, 568–69, (Tex. Crim. App. 2009) (Rule 403 should be used "sparingly," when there is a clear disparity between the degree of prejudice of the offered evidence and its probative value); *see* TEX. R. EVID. 403.

In considering this balancing test, courts must weigh (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *See Gigliobianco*, 210 S.W.3d at 641–42. In any given case, "these factors may well blend together." *Id.* at 642. The court also considers the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black-and-white, whether they are close-up, whether the body depicted is clothed

or naked, the availability of other means of proof, and other circumstances unique to the individual case. **Williams v. State**, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009).

**Discussion**

Appellant argues that State's Exhibits 11 through 15 are graphic photographs of Wilkerson's injuries, were offered after the investigating officers testified to the gruesome nature of the crime scene and the victim's injuries, and the jury observed a video tape walkthrough of the crime scene. Accordingly, his argument continues, the trial court abused its discretion in admitting the exhibits in violation of Texas Rule of Evidence 403.

State's Exhibits 11 through 15 are graphic photos depicting the victim and her injuries at the crime scene. They all show large amounts of blood and numerous and significant injuries she sustained when Appellant struck her repeatedly with the machete and hammer. She is nude in the photos, but only Exhibits 12 and 15 show any of the victim's private parts. Each photo shows a different angle of the victim and the state she was found in as part of the crime scene, including a depiction of the injuries she received. State's Exhibit 11 displays the victim lying in the prone position from her upper back to the top of her head, focusing on the extensive lacerations and trauma to the back of her skull. State's Exhibit 12 depicts the right side of the victim's body and injuries in the semi-prone position. State's Exhibit 13 shows the back side of the victim's body and injuries from the lower back up to her head in the semi-prone position. State's Exhibit 14 reveals the frontal view of the victim in the body bag from her upper chest to her head, including the numerous injuries to her head and neck, such as throat slash wounds. State's Exhibit 15 is an overall bird's eye view of the victim as she was found at the crime scene.

The photographs generally have substantial probative value because they depict the crime scene as found by law enforcement. *See* **Williams v. State**, 301 S.W.3d 675, 692 (Tex. Crim. App. 2009); **Narvaiz v. State**, 840 S.W.2d 415, 430 (Tex. Crim. App. 1992). Furthermore, the State is required to prove that the defendant committed the alleged crime using that specific statutory manner and means, and it may not rely on any other statutory manner and means of committing the crime that it did not plead in the charging instrument. *See* **Thomas v. State**, 444 S.W.3d 4, 8–9 (Tex. Crim. App. 2014); **Cada v. State**, 334 S.W.3d 766, 773–74 (Tex. Crim. App. 2011) (footnote omitted) ("[I]f the . . . offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged in the indictment. And the sufficiency of the evidence is measured by the specific

alternative elements that the State has alleged in the indictment."). The indictment alleged that Appellant caused Wilkerson's death by striking her with a machete and hammer, along with cutting and stabbing her with a machete, and these photos show wounds consistent with the implements Appellant used in committing the crime. Admittedly, the State had other evidence to show the manner and means of the offense, including the weapons themselves, the video walk through of the crime scene, the autopsy results and photos, and Appellant's confession. However, as the State points out, the video does not show the wounds in detail and it selected these five photos out of dozens the investigators took of the victim, one from each side of the victim's body revealing the nature of her injuries.

Additionally, the State required very little time to develop the disputed evidence. The presentation of the exhibits and the questions related to them, consumed only two pages of testimony in the two-day guilt-innocence portion of the trial. Furthermore, the State had some need of the evidence, as aforementioned, to show the crime scene as discovered by Upchurch and the police, as well as the actions of law enforcement upon arrival. As to the additional factors specific to photographic evidence, the photos are in color, two of the exhibits partially show the victim's private parts, and four of the exhibits are close-up.

Even though the photographs are clearly prejudicial, we cannot conclude that that they are so prejudicial that their probative value is substantially outweighed by the danger of unfair prejudice, or that the trial court abused its discretion and acted outside the zone of reasonable disagreement when it admitted the photos over Appellant's objection. Thus, the trial court did not abuse its discretion in admitting State's Exhibits 11 through 15. *See Williams*, 301 S.W.3d at 692.

We overrule Appellant's second issue.

## DISPOSITION

Having overruled Appellant's two issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 6, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**NOVEMBER 6, 2024**

**NO. 12-24-00025-CR**

**DAVID MICHAEL THOMPSON,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 475th District Court

of Smith County, Texas (Tr.Ct.No. 475-0095-23)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*